#24192, #24193-a-SLZ

**2007 SD 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *
#24192

| | |
|---|---|
| JOY SCHELLER, | Petitioner and Appellant, |
| v. | |
| FAULKTON AREA SCHOOL DISTRICT #24-3 and FAULKTON AREA BOARD OF EDUCATION, | Respondents and Appellees. |

* * * *
#24193

| | |
|---|---|
| BARB VETTER, | Petitioner and Appellant, |
| v. | |
| FAULKTON AREA SCHOOL DISTRICT #24-3 and FAULKTON AREA BOARD OF EDUCATION, | Respondents and Appellees. |

* * * *
APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
FAULK COUNTY, SOUTH DAKOTA
* * * *
HONORABLE LARRY H. LOVRIEN
Judge
* * * *

| | |
|---|---|
| ANNE CROWSON PLOOSTER South Dakota Education Association Pierre, South Dakota | Attorney for petitioners and appellants. |
| RORY KING of Bantz, Gosch & Cremer, LLC Aberdeen, South Dakota | Attorneys for respondents and appellees. |

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **04/25/07**

ZINTER, Justice

[¶1.] Joy Scheller and Barb Vetter[1] appeal the nonrenewal of their teaching contracts. They contend that the nonrenewals were ineffective because the Faulkton Area Board of Education failed to follow proper procedure. The circuit court concluded that the statutory procedure for nonrenewal was followed. We affirm.

## Facts and Procedural History

[¶2.] The material facts are not in dispute. Both Scheller and Vetter were retired teachers who were rehired under one-year contracts for the 2004-2005 school year. As rehires, Scheller and Vetter were probationary teachers not entitled to the continuing contract rights provided by SDCL §§ 13-43-6.1, 6.2, and 6.3.

[¶3.] On April 11, 2005, the Board met to decide whether to renew the contracts of thirty-four teachers, which included Scheller and Vetter. The Board first discussed the issue in executive session. After the executive session, the Board reconvened in open session and formally voted to only offer new contracts to thirty of the thirty-four teachers. Scheller and Vetter were two of the four teachers who were not offered new contracts. Following the vote, the Board president directed the superintendent to send notices of nonrenewal to the four teachers whose contracts were not renewed. The notices were prepared that same night. There is

---

1. These cases were appealed separately as Scheller v. Faulkton School District, #24192 and Vetter v. Faulkton School District, #24193. Because the cases involve the same facts and issue, we have consolidated them.

no dispute that Scheller and Vetter received the superintendent's written notice of nonrenewal before April 15th as required by SDCL 13-43-6.3.

[¶4.]    Scheller and Vetter appealed their nonrenewals to the circuit court. They claimed that they were not only entitled to written notice by the superintendent, but also to an "affirmative vote" of the Board to not renew each contract. The circuit court concluded that the Board had come to a consensus concerning the nonrenewal of the four teachers; that the superintendent had authority to send the nonrenewal letters; and that the written notices satisfied the statutory procedure.

[¶5.]    Our standard of review is well-settled:

> A proceeding in circuit court on an appeal pursuant to SDCL 13-46-1 is a trial de novo.  On appeal to the circuit court, the court may determine the legality of that decision.  Strain v. Rapid City School Bd., 447 NW2d 332, 338 (SD 1989).  However, great deference is given to the good faith determinations of school boards on decisions of whether to renew a teacher's contract. Jager v. Ramona Bd. of Educ., 444 NW2d 21, 25 (SD 1989).  The appeal to the circuit court is not a trial de novo in the true sense of the phrase, as it has the limited function of receiving evidence for the sole purpose of determining the legality, and not the propriety, of the school board's decision.  Riter v. Woonsocket School Dist. No. 55-4, 504 NW2d 572, 574 (SD 1993).  The determination of legality is a two-pronged process: (1) whether the School Board acted legally, and (2) whether the School Board's decision was arbitrary, capricious or an abuse of discretion.  *Id.*  On appeal to this Court, we review facts under the clearly erroneous standard, however, questions of law are reviewed de novo.  Aman v. Edmunds Cent. Sch. Dist., 494 NW2d 198, 199 (SD 1992).

Wuest v. Winner School District 59-2, 2000 SD 42, ¶12, 607 NW2d 912, 915-916 (quoting Hughes v. Stanley County School Bd., 1999 SD 65, ¶15, 594 NW2d 346, 351).  The question in this case is whether SDCL 13-43-6.3 required an affirmative

vote to nonrenew.  This is a question of statutory interpretation.  Statutory

interpretation is a question of law, which we review de novo.  Loesch v. City of

Huron, 2006 SD 93, ¶3, 723 NW2d 694, 695.

[¶6.]        That part of SDCL 13-43-6.3 (2004) governing the nonrenewal of non-

continuing contract teachers provided:

> Until a teacher is in or beyond the fourth consecutive term of
> employment as a teacher with the school district, a school board
> may or may not renew the teacher's contract.  The
> superintendent or school board shall give written notice of
> nonrenewal by April fifteenth but is not required to give further
> process or a reason for nonrenewal.

[¶7.]        This statute only has two provisions concerning nonrenewal.  It first

provides that the Board "may or may not renew" a contract.  Second, it requires a

written notice of nonrenewal by the superintendent or school board.  Because the

second provision was concededly satisfied, we only examine the "may or may not

renew" language to determine whether it required an affirmative vote of the Board

to not renew each contract.

[¶8.]        In our view, there is nothing in the language "may or may not renew"

that requires an affirmative vote when a school board decides that it is not going to

offer new contracts to teachers who have not obtained continuing contract status.

"Words used are to be understood in their ordinary sense. . . ."  SDCL 2-14-1.  The

dictionary definition of "may" is "[t]o be allowed or permitted to."  The American

Heritage College Dictionary, 839 (3d ed 1997).  "Not" is "[u]sed to express negation,

denial, *refusal*, or prohibition."  *Id*. at 933 (emphasis added).  The word "renew" is a

verb, denoting *action*.  *Id*. at 1155-1156.  Considering the ordinary meaning of these

words, we believe that the Legislature's use of the word "may" gave the Board

discretion to renew or to not renew. Obviously, in exercising that discretion, renewal would require the affirmative action of a vote to offer contracts to the desired teachers. In contrast, the word "not" gave the Board discretion to refuse to act to offer new contracts that were set to expire by their own terms. Therefore, in the ordinary sense, the statute authorized the Board to renew by the action of an affirmative vote or to nonrenew by a refusal to vote to offer a new contract.

[¶9.] In this case, in executive session, the Board reached a consensus on those teachers that would be offered new contracts and those who would not be offered new contracts. The official action that followed in the open session was an affirmative vote to only offer new contracts to thirty of the thirty-four teachers under consideration. We conclude that the refusal to act (vote) to offer new contracts to the other four teachers was within the Board's statutory prerogative to "not renew" those one-year contracts. This was clearly the decision of the Board because the Board president contemporaneously instructed the superintendent to send notices of nonrenewal to the four teachers. This was all that was required by the statute. Scheller and Vetter's interpretation would require us to read "affirmative vote" into the statute, something that we may not do:

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

Petition of Famous Brands, Inc., 347 NW2d 882, 885 (SD 1984) (internal citations omitted).

[¶10.]     Scheller and Vetter, however, contend that without an affirmative vote, the superintendent had no authority to send the letters of nonrenewal.[2]  They cite two cases, both of which are inapposite.  In *Cutshaw v. Karim*, 256 NW2d 566 (SD 1977), a teacher claimed that because the board had not signed the letter of nonrenewal, the notice was ineffective.  In concluding that the notice was effective, this Court quoted the letter, which indicated that the school board had passed a motion to inform the teacher that his contract was not being renewed.  *Id.* at 567, 568.  From this, Scheller and Vetter argue that an affirmative vote is required because "inherent in [this] Court's ruling was the fact that the school board voted to nonrenew the teacher in question."  While the specific facts of that case apparently included a vote on a motion, neither the issue of the case nor our language suggests that an affirmative vote to not renew was a prerequisite for the superintendent's notice of nonrenewal.

[¶11.]     *Memphis Community Schools v. Henderson*, 152 MichApp 43, 394 NW2d 12 (1986), is also distinguishable.  *Henderson* was decided on Michigan's statutory scheme, which included a requirement that school boards give written notice of whether a probationary teacher's work was satisfactory.  Failure to give that notice was conclusive evidence of satisfactory work, which apparently required extension of the teacher's contract.  *Id*. at 50-51, 394 NW2d at 15-16.  However,

---

2.     Scheller and Vetter also argue that nonrenewal of contracts is a "firing" for the upcoming year, and therefore, the firing must be done in open session by an affirmative vote.  However, *refusing* to renew a *non-continuing contract teacher* is not a firing: it is simply refusing to offer a new contract to a teacher who has no continuing contract rights.  We also note that the vote on which teachers would be renewed and not renewed occurred in a public session.

under Michigan's statutes and case law, the decision on the satisfactory nature of a teacher's work required a record vote, *id.* at 51, 394 NW2d at 16, and South Dakota's statute does not require a record vote.

[¶12.]     In our case, the Board followed both provisions of the statute. Although it voted to renew thirty contracts, it exercised its discretionary authority to refuse to offer contracts to Scheller and Vetter. Following the vote to only offer contracts to thirty of the thirty-four teachers, the Board president instructed the superintendent to give Scheller and Vetter written notices that they would not be offered new contracts. Because the Board had the discretion to refuse to offer new contracts, and because these teachers were provided with the requisite written notice of the Board's decision, the Board complied with the procedural requirements of the statute.

[¶13.]     Affirmed.

[¶14.]     GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, concur.

[¶15.]     SABERS, Justice, concurs specially.

SABERS, Justice (concurring specially)

[¶16.]     WE SHOULD eliminate the following quote from OUR standard of review because it is obsolete, inaccurate and inconsistent with our practice and the remaining portion of the standard of review paragraph:

> The inconsistent quotation is:
>
> The appeal to the circuit court is not a trial de novo in the true sense of the phrase, as it has the limited function of receiving

> evidence for the sole purpose of determining the legality, <u>and</u> <u>not the</u> <u>propriety</u>, of the school board's decision.

(Emphasis added). This quotation is obsolete, inaccurate and inconsistent with our practice and the remaining portion of the standard of review paragraph because the second prong of our determination includes whether the School Board's decision was arbitrary, capricious or an abuse of discretion, all of which deal with the <u>propriety</u> of a board's decision. Even the present case deals with the <u>propriety</u>, not just the <u>legality</u> of the Board's decision.

[¶17.] Therefore, we should rework our standard of review to conform to our practice, accuracy and consistency.